IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 24, 2022 Session

**STATE OF TENNESSEE v. MISCHA KNIGHT CLAIBORNE**

**Appeal from the Criminal Court for Scott County**
**No. 11474     E. Shayne Sexton, Judge**

_____

**No. E2021-00974-CCA-R3-CD**
_____

Defendant, Mischa Knight Claiborne, was indicted by the Scott County Grand Jury for four counts of aggravated battery, one count of solicitation of a minor to commit aggravated sexual battery, nine counts of sexual battery, one count of rape, and one count of continuous sexual abuse of a child.  Defendant pleaded guilty to four counts of attempted aggravated sexual battery, one count of solicitation of a minor, nine counts of sexual battery, one count of rape, and the continuous sexual abuse of a child charge was dismissed.  Following a sentencing hearing, the trial court denied alternative sentencing and ordered Defendant to serve an effective 15 years' incarceration.  Defendant appeals his sentences as excessive. After a thorough review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Joseph A. Fanduzz, Knoxville, Tennessee, for the appellant, Mischa Knight Claiborne.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and Thomas E. Barclay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Procedural History***

*Facts*

The record does not include a transcript of Defendant's guilty plea hearing. The only information about the facts underlying Defendant's convictions is contained in the presentence report, which states:

> According to the report from the DCS Child Abuse Hotline, the report indic[a]ted [Defendant] would have the younger boys pull their pants down so he could perform a check on them for his college class. The report stated [Defendant] would fondle the victims' penises. According to the report, [Defendant] also digitally penetrated one of the victim's anal area to "perform a check."

Defendant also provided his version of the offenses to the presentence investigating officer. Defendant stated that the first victim was 15 years old and attended the same church as Defendant. On two occasions, Defendant asked the victim to remove his pants and underwear, move his penis around, and then put his pants back on. Defendant stated that he engaged in the same behavior with the second victim, whom he also knew from church, on two occasions. The second victim was 13 years old at the time of the first offense and 16 years old at the time of the second offense. Defendant stated that the third victim was a 13-year-old boy he met at church. Defendant also asked him to pull down his pants, move his penis around, and pull his pants back on. Defendant did not state that he anally penetrated one of the victims.

Defendant entered guilty pleas to four counts of attempted aggravated sexual battery, nine counts of sexual battery, one count of solicitation of a minor, and one count of rape. The plea agreement states: "[t]he judge will have discretion to order the sentences imposed to be concurrent or consecutive, however, the total effective sentence will be no less than eight (8) years nor more than fifteen (15) years. The defendant will not be placed on [j]udicial [d]iversion. There is no agreement as to the manner of service."

*Sentencing Hearing*

At the sentencing hearing, the presentence investigation report was offered into evidence and admitted as an exhibit. The presentence report included a Psychosexual Risk Assessment, which indicated that Defendant posed a moderate risk to reoffend, and a Strong-R Needs Report. Defendant's Visual Assessment of Sexual Interest ("VASI") evaluation indicated a below normal level of sexual interest in adult females and adult males, which is a cause for "concern." Defendant "demonstrated significantly above normal visual fixation responses" to male and female children age 12 and under and an "above normal visual fixation" to adolescent boys and girls ages 13 to 17. Defendant's "responses are associated with an abnormal fixation" to those groups. The presentence report concluded that Defendant would "likely do very well in the community under

supervision and treatment" based on his willingness to discuss his offending and his understanding that his offending was a problem.

The three victims gave victim impact statements. One victim gave a written statement. He stated that he was 12 years old and had been taking piano lessons from Defendant for a few years. He stated that he saw Defendant as "a role model[,]" and he trusted Defendant "when [Defendant] told [him] that he needed to touch [his] private areas for a 'school project.'" Defendant "did it to [the victim] a couple more times" before the victim eventually told his parents about the abuse. The victim lost interest in playing piano and had to attend counseling as a result of the offenses.

Another victim testified at the hearing. He stated that Defendant had played piano at his church and belonged to the same youth group as the victim. The victim went to Defendant's house for music reading lessons. On more than one occasion, when the victim was about 12 years old, Defendant did "inappropriate things" to him and told him he was doing it for a college class project. The victim felt "[i]nsecure and alone." The victim became afraid and distrustful of adults.

The third victim testified that he was about 12 years old at the time of the offenses. He took piano lessons from Defendant at Defendant's house. On more than one occasion, Defendant asked to "see [the victim's] privates for a college psychology project[.]" The victim trusted Defendant "that he was doing the right thing and he really needed [him] for his college project." Afterward, the victim felt ashamed and embarrassed. He was afraid to disclose the abuse.

Defendant's mother, Christy Claiborne, testified that she homeschooled Defendant from kindergarten through high school. She testified that Defendant socialized with other homeschoolers and at church, but she believed that homeschooling affected his socialization. Ms. Claiborne testified that Defendant dated girls from church, but they never held hands or kissed because of their moral convictions. She described Defendant as ashamed and depressed when he was charged and indicated that he was immediately remorseful. Defendant became suicidal, and he was admitted to a mental health facility. After his treatment there, Defendant began counseling with a therapist who specialized in psychosexual problems. Defendant also finished college and got a job. Defendant lived with his parents at the time of sentencing. Ms. Claiborne testified that Defendant contributed financially to their household bills and groceries.

At the conclusion of the sentencing hearing, the trial court stated that it had considered the presentence report, the STRONG-R assessment and psychosexual report, the enhancement factors submitted by the State, and the mitigating factors submitted by Defendant. The court applied enhancement factor (3), finding that the offenses involved

more than one victim; enhancement factor (7), finding that the offenses were committed to gratify Defendant's desire for pleasure or excitement; and enhancement factor (14), finding that Defendant abused a position of private trust. The court gave some weight to mitigating factor (5), that Defendant, because of his age, lacked substantial judgment in committing the offense.

The trial court imposed a sentence of 10 years for the rape conviction, a Class B felony; three years for each of the attempted aggravated sexual battery convictions, Class C felonies; three years for the solicitation of a minor conviction, a Class C felony; and two years for each of the sexual battery convictions, Class E felonies. The court noted, "[s]o that would be the top end of the sentence in the Es; . . . the bottom end of the C felonies; and midrange on the B felony." The court ordered that Defendant's sentences for his sexual battery convictions run concurrently with each other and consecutively to his sentences for his attempted aggravated sexual battery and rape convictions, for a total effective sentence of 15 years.

Regarding alternative sentencing, the trial court stated that Defendant was not a risk to the "general community" but that he posed a risk to underage males based on the psychosexual evaluation. The trial court noted that Defendant made conflicting statements about having been victimized himself, and the court found that if Defendant had been abused, his "leaving these young men left to deal with the same – with the very same thing, that's monstrous." The court found that Defendant's repeating the same criminal conduct of which he was a victim was a "powerful" indication of Defendant's future criminal conduct. The trial court found that Defendant "claim[ed] depression" and sought psychological treatment only after he was arrested. The court found it to be "very hollow" and that it reflected on Defendant's lack of potential for rehabilitation. The court found that a sentence of probation would unduly depreciate the seriousness of the offenses and that the community needed to know "[y]ou cannot hurt people, take advantage of people, and not pay for it."

### *Analysis*

Defendant contends that the trial court abused its discretion by misapplying certain enhancement factors, failing to consider certain mitigating factors, and departing from the relevant statutory considerations in denying probation. The State asserts that Defendant's within-range sentence is proper and the record supports the trial court's decision to impose a sentence of incarceration.

### *Length of Sentence*

- 4 -

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210(b) (2021); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5) (2021).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. T.C.A. § 40-35-210(e) (2021); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2021), Sentencing Comm'n Cmts.

Because the trial court imposed within-range sentences and placed its reasoning on the record, we will review its decisions under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707.

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* T.C.A. § 40-35-114 (2021); *see also Bise*, 380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is

'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

Defendant challenges the trial court's application of enhancement factors (3) and (7), that the offenses involved more than one victim and that the offenses involved victims and were committed to gratify Defendant's desire for pleasure or excitement. T.C.A. § 40-35-114 (3) and (7). We agree with Defendant that the trial court's application of enhancement factor (3) was improper. *See* T.C.A. § 40-35-114(3); *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) ("[T]here cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim."). The trial court also misapplied enhancement factor (7) to Defendant's sentences for sexual battery and attempted aggravated sexual battery. Our supreme court has held that sexual battery necessarily includes the intent to gratify a desire for pleasure or enhancement. See *State v. Kissinger*, 922 S.W.2d 482, 489 (Tenn. 1996). Enhancement factor (7) can be applied, however, to a conviction for rape of a child. *State v. Osborne*, 251 S.W.3d 1, 26 (Tenn. Crim. App. 2007).

The trial court properly applied enhancement factor (14) that Defendant abused a position of private trust and gave "some weight" in mitigation to Defendant's age at the time of the offenses. Despite the trial court's misapplication of enhancement factors (3) and (7), the sentences imposed were within the statutory range and consistent with the purposes and principles of sentencing, and we accordingly conclude there was no abuse of discretion. In *Bise*, the trial court misapplied the single enhancement factor supporting the sentence. *Bise*, 380 S.W.3d at 708. The sentence was nevertheless upheld because the trial court articulated reasons for the sentence which were consistent with the purposes and principles of sentencing. *Id*. at 709. "The application of a single enhancement factor can justify an enhanced sentence." *State v. John M. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020) (citing *State v. Bolling*, 75 S.W.3d 418, 421 (Tenn. Crim. App. 2001)), *perm. app. denied* (Tenn. Dec. 2, 2020).

Here, the trial court considered the evidence and the statutorily mandated considerations and referenced the principles and purposes of sentencing. We conclude that, even though the trial court committed errors in its determinations regarding the application of enhancement factors, the sentences imposed were within the statutory range and consistent with the purposes and principles of sentencing, and we accordingly conclude there was no abuse of discretion.

*Denial of Probation*

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W.3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" T.C.A. § 40-35-102(6)(A) (2021).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2021). Furthermore, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id*. § 40-35-103(5). In deciding the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

Here, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The court stated:

> And then we go on to whether or not the sentence of probation would unduly depreciate the seriousness of the offense. That's the bell ringer. This is – the people of this community – or of this community or anybody has to know you can't get away with that. You cannot hurt people, take advantage of people, and not pay for it.

. . . .

> And I want the people that have been affected by this act – these acts – along with anyone, and it sounds – if we're talking about a church, we're not just talking about these gentlemen. We're talking about a whole group of people that knows about it and they're drawing their own conclusions about what's right and what's wrong and how courts address these issues. Well, I want it to be clear that we are not going to unduly depreciate the seriousness of this offense.

Generally, to deny alternative sentencing based solely on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). This heightened standard does not apply, however, when the trial court considers another basis for denying probation. *See Trent*, 533 S.W.3d at 293-94.

Here, the trial court considered the presentence investigation, Defendant's mental and social history, the circumstances surrounding the offenses, and Defendant's lack of a criminal record. The court noted Defendant's "ability to hide [his behavior]," which led to "more than one person being abused," as well as "the continuous nature" of Defendant's abuse. The court considered Defendant's potential for rehabilitation and noted his risk to reoffend. The court noted that it was unclear whether Defendant understood the damage he had caused to his victims and that Defendant's decision to seek mental health treatment only after his arrest rang hollow.

Although Defendant had no prior criminal record, his repeated commission of similar offenses weighs against his amenability to correction. Defendant's abuse of his position of trust against victims he befriended through church supports a finding that confinement was necessary to avoid depreciating the seriousness of the offense. We also note that Defendant was less than forthcoming about the offenses, demonstrating a failure to take responsibility for his actions and a lack of candor. Defendant admitted that he engaged in multiple incidents of viewing the genitals of three adolescent males, but the DCS report indicated that he also fondled the boys' penises and digitally penetrated one victim's anus. *See State v. Cody Garris*, No. M2012-01263-CCA-R3-CD, 2013 WL 838673, at *7 (Tenn. Crim. App. Mar. 6, 2013) (finding that a lack of candor and failure to accept responsibility are acceptable grounds to deny probation), *no perm. app. filed*. We conclude that the record supports the trial court's denial of alternative sentencing. Defendant is not entitled to relief.

CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
TIMOTHY L. EASTER, JUDGE